IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STATE OF DELAWARE,             :
                              :     I.D. No.  1403014647
        v.                    :
                              :
TITUS W. HOBBS,               :
                              :
        Defendant.            :


Submitted: April 20, 2015
Decided: May 29, 2015

**ORDER**

Upon Defendant's Motion to Suppress.
*Denied.*


Gregory R. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorney for the State.

John R. Garey, Esquire of John R. Garey, P.A., Dover, Delaware; attorney for the Defendant.



WITHAM, R.J.

Upon consideration of the Defendant's Motion to Suppress pursuant to Superior Court Criminal Rule 41(f), the State's Opposition, and the record of this case, it appears that:

1.      On September 19, 2014, Titus Hobbs ("Defendant") moved to suppress evidence obtained at the scene of his arrest, and at the police station where he was detained.  The Court heard oral argument concerning this motion on April 1, 2015. Following the argument, both the State and Defendant filed supplemental briefs in support of their respective positions concerning Defendant's motion.

2.      Corporal Edwin H. Justiniano ("Corporal Justiniano") was dispatched to the Royal Farms on Route 10 in Dover, DE, on the early morning of March 21, 2014.  There had been reports of a pickup truck parked near the store, whose occupant was asleep at the wheel.  Upon arrival, Corporal Justiniano discovered Defendant in the parking lot, asleep in the front seat of his blue Ford F-150 truck, with the engine running.  Attached to the truck was a camper.  According to Corporal Justiniano, the door to the Defendant's truck was partially  open. Defendant disputes this part of Corporal Justiniano's narrative, claiming that the door was closed.  In any event, Corporal Justiniano roused the sleeping Defendant, finding that a strong odor of alcohol emanated from the truck's cabin.  Corporal Justiniano further observed Defendant exiting the car with some difficulty, having to hold on to the side of the truck for support.

3.      Defendant's behavior and overall demeanor led Corporal Justiniano to believe Defendant was under the influence of alcohol.  Upon questioning, Defendant

2

revealed he had been drinking the prior evening. Corporal Justiniano also noted Defendant's mumbled speech. These factors together, prompted Corporal Justiniano to conduct several field sobriety tests to determine Defendant's level of intoxication. Among these tests were: (1)an alphabet test; (2) a counting test; (3) a finger to nose test; (4) a Horizontal Gaze Nystagmus ("HGN") test; and (5) a Portable Breath Test ("PBT"). According to Corporal Justiniano, Defendant failed all five sobriety tests.

4.    Following Defendant's deficient performance on the field tests, Corporal Justiniano transported the Defendant to Troop #3 Station. It was there that Defendant's blood was drawn in order to measure his blood alcohol level. The procedure was performed by Hal Blades ("Mr. Blades"), the Delaware State Police Phlebotomist. Although there is some dispute as to the events preceding the drawing of blood, the parties agree that Defendant singed a consent form relating to the procedure. Defendant claims he showed some reluctance to having his blood drawn, but acquiesced as he believed the police would force the procedure on him, if he were to refuse. Both Corporal Justiniano and Defendant, further agree that Defendant was not told he could refuse the test. However, inspection of the executed consent form reveals that the executor acknowledges his right to refuse.

5.    Upon filing his motion to suppress the evidence obtained concerning his sobriety on the morning in question, Defendant was represented by prior counsel. At present, and during the oral argument, Defendant is/was represented by new counsel. The Court, therefore, considers solely the arguments put forward by Defendant's counsel during oral argument, as well as in the supplemental briefing. This is, also,

3

the preference intimated by Defendant's current counsel at argument. Given this substitution of counsel in the midst of Defendant's pending motion, the Court will forgo consideration of the tardiness implicated by a motion whose argument was heard over six months from its filing. Moreover, the State points out that even the initial motion's filing was overdue. However, the Court does so in this situation singularly, and at its discretion, purposefully avoiding any precedential treatment of the motion.

6.      Defendant's motion to suppress is premised upon the blood test constituting an unreasonable search and seizure, violating the U.S. and Delaware Constitutions. Defendant formulates his argument in two parts: (1) the field sobriety tests did not create probable cause, justifying the blood test; and (2) the consent form was invalid, thereby necessitating the issuance of a warrant, prior to blood being drawn.

7.      As regards the first point, Defendant has failed to establish why the results of the field sobriety tests were insufficient to establish the probable cause required to conduct a blood test. Defendant's sole contention is that only the HGN test is certified by the NHTSA. The Court deems this of little consequence. In Delaware, "[p]robable cause to arrest for a DUI offense exists when an officer possesses information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed."[1] "[P]olice must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair

---

[1] *Lefebvre v. State*, 19 A.3d 287, 292 (Del. 2011) (internal quotations omitted).

4

probability that the defendant has committed a DUI offense."[2]  Importantly this information or these facts, need not be "sufficient evidence to convict."[3]  Where Defendant failed five field sobriety tests– in addition to the equally egregious fact that Defendant was asleep at the wheel of a running car –an officer has established probable cause to investigate further, and order a blood test.

8.     The second part of Defendant's argument necessitates consideration of the U.S. Supreme Court's holding in *Missouri v. McNeely*.[4]  In considering a Fourth Amendment unlawful search and seizure argument, the U.S. Supreme Court ruled that probable cause, in and of itself, was not enough to permit the involuntary drawing of a suspect's blood, without a warrant.[5]  With respect to the circumstances underlying the case at bar, the drawing of Defendant's blood would be contrary to *McNeely* and the Fourth Amendment, where it was: (1) involuntary; and (2) done in the absence of a warrant.  Although there is no dispute that Corporal Justiniano did not obtain a warrant, *McNeely* is, nonetheless, inapplicable as this Court finds Defendant to have consented to the blood work.

9.     Defendant argues that the blood test was administered without his approval,  as the consent form he signed was invalid.  Therefore, under *McNeely*,

---

[2] *Id.*, at 292-293 (internal quotations omitted).

[3] *Id.,* at 292.

[4] 133 S.Ct. 1552 (2013).

[5] *Id.*

even if probable cause existed, Corporal Justiniano could not order Defendant's blood to be drawn, sans warrant. Defendant bases his invalidity argument on the fact that the form was a boilerplate printout, which Defendant argues, was not intended for consenting to blood being drawn. The form is, instead, said to be for searches of premises and of physical persons. Further, reading the language of the form in a highly technical manner, Defendant avers that the blood had to be drawn by an "officer." As per Defendant, Mr. Blades, the phlebotomist, was not an officer. Lastly, Defendant takes issue with the fact that Corporal Justiniano did not inform him of his right to refuse the blood test, and that a warrant would have to be issued, in the event of such a refusal.

10.     The Court finds Defendant's position with regard to the opaqueness of the consent form to be unpersuasive. Rather than strengthening Defendant's argument, the Court deems the broadness of the form's language to bolster the claim that consent to blood work may be effectuated by the form. The Court sees the form as intentionally indefinite, so as to encompass the various types of searches police officers conduct. Therefore, Defendant's zeroing in on the term "officer," where Mr. Blades is a phlebotomist employed by the Delaware State Police, strikes this Court as precisely the type of argument the breadth of the form's language was meant to avoid.[6] More importantly, as this is Defendant's motion, the burden of proof is on

---

[6] In addition, the Court recognizes the State's citation to Black's Law Dictionary, defining "officer" broadly as a "[p]erson holding office of trust, command or authority in...government...or other institution or organization." Black's Law Dictionary 1085 (6th Ed. 1990).

him to provide support for the contention that "officer" is strictly limited to *police* officers. Defendant has failed to do so.

10. Lastly, the Court addresses the argument that Defendant's execution of the consent form had no effect, as Corporal Justiniano did not inform him of his right to refuse the blood test. As mentioned previously, although Corporal Justiniano admits he did not inform Defendant of the necessity of a warrant, were Defendant to not comply, the form executed by Defendant acknowledges the right to refuse a search. Indeed, Defendant's signature is directly below text to that effect. However, of even greater significance is the fact that both the Legislature and the Delaware Supreme Court have determined that "[a]n arresting officer is *not* required to advise a suspect of any right to refuse testing..."[7] The Delaware Supreme Court in *Seth v. State*, reasoned that the Legislature did away with the requirement of consent to testing by enacting 21 *Del. C.* § 2740 and § 2750.[8] § 2740(a) provides that "any person who drives, operates or has in actual physical control a vehicle...within the State shall have been deemed to have given consent...to a chemical test or tests of that person's blood..."[9] To this, the Delaware Supreme Court reads § 2750 as adding that, even if the right to refusal is not revealed, the evidence is, nonetheless, admissible,

---

[7] *Seth v. State*, 592 A.2d 436, 445 (Del. 1991) (emphasis added).

[8] *Id.*, at 436.

[9] 21 *Del. C.* § 2740(a).

*State v. Titus W. Hobbs*
I.D. No. 1403014647
May 29, 2015


so long as Fourth Amendment concerns are not implicated.[10]  The U.S. Supreme Court has clarified that Fourth Amendment considerations are relevant where there is no probable cause, and the drawing of blood is not consensual.[11]  Such is not the case here.  Therefore, whether Defendant was informed of his right to refusal has no bearing on the admissibility of the blood test evidence.

11.    For the foregoing reasons, Defendant's Motion to Suppress is **DENIED.** IT IS SO ORDERED.


/s/ William L. Witham, Jr,
Resident Judge


oc:    Prothonotary
cc:    Gregory R. Babowal, Esquire
       John R. Garey, Esquire

---

[10] *Seth*, 592 A.2d at 445 ("[s]ection 2570(a) eliminates any defense to admissibility not implicating the Fourth Amendment").

[11] *McNeely*, 133 S.Ct. 1552.

8